Henry, Bruce R., J.
This matter came on for a hearing on the motion of the plaintiff, Middlesex Savings Bank (Middlesex), for a preliminary injunction *244 against the defendants, Julie T. Cooper, Neil C. Foisy, Timothy Terranella, and Christopher Carter, Individually and as Trustees of the University Park Lofts Condominium Trust (the Trust); Karen J. Montalvo as Trustee of the University Park Lofts Condominium Trust; and Subhash Agrawal and Anjali Agrawal. Mid-dlesex seeks, among other relief, recission of grants of parking space and roof deck easements to the Agrawals. Those grants leave Middlesex without parking for the 24 condominium units which it owns by foreclosure at the University Park Lofts Condominiums. The applicable standard is that set forth in Packaging Indus. Group, Inc. v. Cheney, 380 Mass. 609, 616-17, 405 N.E.2d 106 (1980).
After a hearing and consideration of the materials provided by the parties, I find that the plaintiff has demonstrated that it has a substantial likelihood of success on the merits and that the balancing of the potential harms by the allowance or disallowance of the requested relief weighs heavily in its favor. Therefore, the plaintiffs motion for a preliminary injunction is ALLOWED.
Background
These background facts are taken from the verified complaint of the plaintiff and the verified objection of the defendants to the requested injunctive relief.
The University Park Lofts Condominium (Condominium) is a concrete and steel building in Worcester, Massachusetts. It has been converted into 37 con-domimum units. In March of 2006, HE&PG Realty, LLC (HE&PG) granted a mortgage to Strata Bank on the properly which was to become the Condominium. HE&PG created the Condominium by recording a Master Deed on December 8, 2006. The Condominium contains 37 units and a total of 55 parking spaces, 11 of which are located within the building. The Condominium also contains an unfinished roof deck area for which are planned 14 individual roof decks.
On December 8, 2006, HE&PG recorded the Declaration of University Park Lofts Condominium Trust. Between that date and February 26, 2008, when HE&PG filed a petition for bankruptcy, only eight units were sold. Structural problems arose which purportedly were not addressed by the developer. Construction on the roof decks did not begin. HE&PG did not pay monthly assessments on the 29 units which it possessed. The defendants assert that the Trust’s Reserve Fund and Working Capital Fund were drained as a result of HE&PG’s failure to pay its monthly assessments. HE&PG was also in default on its mortgage payments. As noted, HE&PG sought bankruptcy protection on February 26, 2008. Strata Bank foreclosed its mortgage on May 29, 2008. Purchasers at the foreclosure auction were Strata Bank (25 units); KASL, LLC, an entity managed by the defendant Sub-ash Agrawal (3 units); and Leli Yang and Daoguang Lin (1 unit).
In November of 2008, Strata Bank conveyed one of its units, along with an easement for two parking spaces, to the defendant Carter.
At some time after the foreclosure, the defendants Cooper, Foisy, Terranella, Carter and Montalvo were appointed as Trustees. Pursuant to Section 3.1.1 of the Declaration of Trust, Trustees must be natural persons, over 18 years of age, and a current unit owner. Middlesex, therefore, has no representation on the Board of Trustees, although it owns 24 of the 37 units.
Middlesex acquired Strata Bank on July 1, 2009. As a result of that acquisition, Middlesex acquired ownership of its 24 condominium units. The parties dispute whether by acquiring Strata Bank’s interests in the Condominium Middlesex also acquired an obligation to pay the past due monthly assessments which HE&PG had not paid. The monthly payments have been made by Strata/Middlesex since the time of the foreclosure.
KASL, LLC in August of 2009, offered Middlesex $850,000 for its 24 units. Middlesex received a higher offer of $950,000 from NGD Redevelopment Company, LLC (NGD). On August 13, 2009, Middlesex entered into Purchase and Sale Agreements with NGD for the sale of its 24 units. Those Purchase and Sale Agreements called for a closing date of August 31, 2009.
On August 21, 2009, in exchange for $22,000 the Trustees of the Trust conveyed easements in all but two of the remaining parking spots (those two being reserved for guests) and in the unbuilt roof decks to the defendants Subash and Anjali Agrawal and KASL, LLC. No notice was provided to Middlesex of the decision to sell the easements to the defendants and the parties dispute whether such notice was required either by law or by the Declaration of Trust or by the Master deed.
Discussion
The parties disagree as to who had the right/power to deal with the parking and roof deck easements. Middlesex contends that it stepped into the shoes of the developer, at least in that regard, and that it was the party who had the right to deal with the parking spaces and the roof decks. The defendants assert that as the Trustees they were the proper party under the applicable statutory provisions and the Declaration of Trust to do precisely what they did. For purposes of this motion only, I will assume, without so deciding, that the defendant Trustees had the power to sell easements for the parking spaces and the roof decks.
Even so assuming, I find that the plaintiff has met its burden of showing its entitlement to injunctive relief.
As Trustees, the defendants must act in accordance with the fiduciary duties which they owe to all of the owners of the units, including Middlesex. The Trustees have a duty to administer the Trust in a manner that *245 is impartial with respect to the various beneficiaries of the Trust. “[I]n investing, protecting, and distributing the trust estate, and in other administrative functions, the trustee must act impartially and with due regard for the diverse beneficial interests created by the terms of the trust . . .” Restatement (Third) of Trusts §79 (2007). Here, the actions of the Trustees in selling to one of the beneficiaries all of the available parking spaces and all of the roof decks show anything but impartiality. The clear import of their actions is that for what appears to be an attempt to gain leverage in their dispute with Middlesex over the developer’s past-due assessments or to coerce a sale of the units to the Agrawals, they have abandoned any effort at impartiality and have acted in favor of one beneficiary over another without good reason to do so.
There does not appear to be a legitimate rationale for the sale of the easements or for adversely impacting just the plaintiffs units with no on-site parking and no ability to have a roof deck. The Trustees did so without any notice to Middlesex, which they knew had no representation on the Board. They did so for a price which appears to be below market value. They did so in disregard of their obligation to act impartially in dealing with the trust’s real estate.
The plaintiff has demonstrated a likelihood of success on the merits of its claims. Whether the claims are based on the statute, on the Master Deed, or on the Declaration of Trust, there is a core obligation on the part of the Trustees to act impartially. Their actions in depriving one unit owner of the benefits which all of the others have or had (i.e., the right to obtain assigned parking spaces and roof decks) are in violation of that core obligation.
In balancing the potential harms from allowing or denying the requested injunctive relief, it is clear that the defendants are not harmed by returning the parking spaces and roof decks from the ownership by the Agrawals to common property available for distribution in a fair and impartial manner. Middlesex may well lose an opportunity to sell its property, which it has a right to do. It will not be able to convey with its units any parking space(s), which will likely adversely impact its ability to sell the units and the value of those units, if someone would purchase them. The balancing of the potential harms clearly weighs in favor of the plaintiff.
ORDER
For the foregoing reasons, the Plaintiffs Motion For Preliminary Injunction is ALLOWED. The defendants are ORDERED to either rescind the sale of the parking and roof deck easements (see exhibits H, I, and J attached to the plaintiffs Verified Complaint), or post a bond in the amount of $100,000.